UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - -

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DOUGLAS RAY WILLISON,

    Defendant .
_____/

No. 1:09-CR-232

Hon.  Robert Holmes Bell
   District Judge

GOVERNMENT'S RESPONSE TO MOTION
TO SUPPRESS EVIDENCE

  The Defendant has filed a motion to suppress evidence and statements arising out of his arrest on August 9, 2009.  Drug Enforcement Agents (DEA) working in Pennsylvania with a confidential informant had monitored a series of recorded telephone calls between their informant and Douglas Willison, who was living in Arizona.  The informant detailed a prior marijuana selling relationship with Willison that spanned a decade and the informant believed he could purchase marijuana from Willison again.  The informant recorded numerous calls with Willison during which it became clear that the two knew each other well and during which they shared personal family information.

  The calls included the informant asking to reestablish a working marijuana dealing relationship with Willison by repaying a prior drug debt owed to Willison.  During the conversations, both Willison and the informant named prior sources of marijuana that they had used in Arizona while working together.  The recorded telephone calls included Willison describing his efforts to secure marijuana that he intended to transport from Arizona to Michigan for sale in Michigan, Indiana and Pennsylvania.

During the last recorded telephone call, on Wednesday, August 5, 2009, Willison indicated that the marijuana was already loaded onto a commercial vehicle and that it should arrive in Michigan in a few days. He hoped it would arrive on either Sunday, August 9, or Monday, August 10, and that he would fly from Arizona to meet it. In other telephone calls, Willison disclosed that he had loaded the marijuana into a pickup truck that he owned and that he arranged to have a commercial hauler place the truck onto a trailer and bring it to Michigan. Willison told the informant that he would fly to Chicago, rent a vehicle and meet the commercial truck driver off an interstate in Michigan to retrieve his pickup. He told the informant that he would be staying in a hotel in Coldwater, Michigan, and that they could meet on Sunday, August 9, or Monday, August 10, to complete the delivery of some of the marijuana to the informant.

The DEA agents in Pennsylvania informed their counterparts in Michigan that Douglas Willison would arriving in Michigan on August 8, 9 or 10 and that he would be staying in a hotel in the Coldwater, Michigan, area. They reported that he should have in his possession a pickup truck loaded with marijuana that he intended to sell in Michigan and Indiana. They described the basis of their knowledge. Acting on that information, DEA Special Agent Thomas Burns, working with state and local law enforcement officers, searched out and located Douglas Willison at a Coldwater hotel (the Hampton Inn) and observed that he had a rental car with Illinois plates.

On the morning of Sunday, August 9, 2009, they watched Willison enter a pickup truck registered in his name and drive from the Hampton Inn to a local storage locker, where he remained for 10-15 minutes. They then followed him as he left the storage locker and headed south towards the Indiana border. Prior to reaching the border, they contacted

Michigan State Police Troopers and told them of their suspicions. A State Police Trooper witnessed a traffic infraction and initiated a traffic stop.

Willison was extremely nervous during the stop. The trooper noted that he was shaking visibly and had been sweating profusely, despite having an air-conditioned vehicle. Willison was told that the officer suspected he might have drugs in the vehicle; Willison declined a request to search it. A police canine unit was summoned and came from Indiana, arriving on the scene in short order. The canine, trained and certified in the detection of controlled substances, reacted to the covered bed of the truck. A subsequent search uncovered approximately 150 pounds of marijuana and Willison was arrested.

Willison consented, in writing, to a search of the storage locker and more than 250 pounds of marijuana was recovered. An additional $49,300 in cash was recovered from a rental vehicle being driven by Mr. Willison's girlfriend who, as a registered driver on the rental agreement, consented to its being searched.

Mr. Willison challenges the initial stop and search of his truck.

## Legal Issues and Argument

Where police have reason to believe that a vehicle has been used to facilitate a drug trafficking offense, they may seize the vehicle and search it without a warrant. Florida v. White, 526 U.S. 559 (1999). If a car is readily mobile and probable cause exists to believe it contains contraband, the police may search it without a warrant. Pennsylvania v. Labron, 518 U.S. 938 (1996). Where police have probable cause to believe that the vehicle itself is contraband because it is or was facilitating a drug crime, they may seize it

from a public place without a warrant. Florida v. White, 526 U.S. 559, 119 S.Ct. 1555 (1999).

An officer's experience in stopping people, the inconsistencies of their statements and otherwise innocent facts may give rise to reasonable suspicion justifying a stop. United States v. Cortez, 449 U.S. 411 (1981). "Reasonable suspicion" is a less demanding standard than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content from that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990).

In the instant case, the officers had reasonable suspicion, if not probable cause, to stop Willison's vehicle before it reached the Indiana border. That reasonable suspicion clearly developed into probable cause to search based upon the canine reaction to the bed of the pickup truck.

The police stop for a traffic violation was lawful

The stop of Willison's vehicle was constitutionally permissible based solely on the observed traffic violation. The Sixth Circuit has repeatedly held that an officer's motives or desire to conduct a further investigation are irrelevant if probable cause exists to make a traffic stop, thus the Defendant's claims that the traffic stop was pretextual is without legal moment. United States v. Johnson, 242, F.3d 707 (6th Cir. 2001); United States v. Wellman, 185. F.3d 651 (6th Cir. 1999). Accord Whren v. United States, 517 U.S. 806 (1996)(probable cause regarding traffic offense justifies automobile stop regardless of possible pretext.) "[S]o long as the officer has probable cause to believe that a traffic

violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." United States v. Bradshaw, 102 F.3d 204, 210 (6th Cir. 1996); United States v. Graham, 483 F.3d 431 (6th Cir. 2007).

Nor does the law require that a "serious violation" occur before a police officer may effect a traffic stop. This circuit has repeatedly upheld the validity of traffic stops for relatively minor civil traffic infractions. In addition to the numerous cases cited by the court in United States v. Copeland, 321 F.3d 582 (6th Cir. 2003), *infra.*, in United States v. Garrido, 467 F.3d 971 at 976-77 (6th Cir. 2006), the defendant's vehicle, which contained drugs, was stopped because it was following too closely to other vehicles while in United States v. Harvey, 16 F.3d 109, 111 (6th Cir. 1993), the traffic stop was based upon defective equipment and speeding. In United States v. Akram, 165 F.3d 452, 455 (6th Cir. 1999), the court noted that stopping a vehicle for failure to signal a lane change, while a "trivial traffic violation", justified the stop regardless of the police officer's motivation.

In United States v. Copeland, 321 F.3d 582 (6th Cir. 2003), the court discussed the conditions under which a police officer may stop a motorist. The court noted:

> First, in the largest class of cases, this court has held that a police officer has probable cause to stop a vehicle based upon an observed moving violation. *See e.g., United States v. Johnson,* 242 F.3d 707 (6th Cir. 2001) (broken taillight); *United States v. Hill,* 195 F.3d 258 (6th Cir. 1999) (Speeding); *United States v. Wellman,* 185 F.3d 651 (6th Cir. 1999) (Speeding); *United States v. Navarro-Camacho,* 186 F.3d 701 (6th Cir 1999) (Speeding); *United States v. Akram,* 165 F.3d 452 (6th Cir. 1999) (failure to signal lane change); *United States v. Palomino,* 100 F.3d 446 (6th Cir. 1996) (driving too slowly and weaving in traffic).

> Second, this court has found that the probable cause standard of *Whren* is satisfied where an officer observes a vehicle, either in motion or while stopped, that does not comply with the appropriate registration requirements. *See e.g. United States v. Myers,* 102 F.3d 227, 232 (6th Cir. 1996) (probable

5

> cause satisfied where the officer temporarily detained driver in parked car with an expired license tag). . . .
>
> Finally, this court has found that an officer has probable cause to stop a driver in the course of a parking violation. In *Myers*, a police officer observed the defendants seated in an illegally parked car with an expired license tag. The *Myers* court held that because the defendants were engaged in "two clear traffic violations" the officer had probable cause to temporarily detain the defendants to issue citations . . . . Notably, the Michigan Supreme Court has also held that a police stop of an illegally parked vehicle under Mich. Comp. L § 257.675 satisfies the Fourth Amendment. *People v. Ingram,* 412 Mich. 200, 312 N.W.2d 652, 654 (1981).

The court then held that a police officer may stop a vehicle even for an antecedent parking violation. Id at 594. In reaching this conclusion, the court noted that MCL 257.742 (1) provides:

> Sec. 742. (1) A police officer who witnesses a person violating this act or a local ordinance substantially corresponding to this act, which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check. . . .

The canine sniff was permissible

The State Troopers did not need permission to have a canine sniff around the vehicle because a dog sniff is not a Fourth Amendment search. United States v. Plax, 462 U.S. 696, 707 (1983); United States v. Gant, 112 F.3d 239, 241 (6th Cir. 1997). No suspicion of dug activity is required in order to work a trained canine around a car stopped for a traffic violation. Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834 (2005).

A reasonable delay to secure a canine search is also permissible. A canine sniff within one-half hour of an investigatory stop passes muster. United States v. Garcia, 496 F.3d 495 (6th Cir. 2007). In United States v. Perez, 440 F.3d 363 (6th Cir. 2006), a one

hour delay to secure a second drug dog was found to be not unreasonable. In <u>United States v. Orsolini</u>, 300 F.3d 724 (6th Cir. 2002), a 51 minute delay, of which 35 minutes were spent arranging for a canine unit, was held to be reasonable. The court looks to the totality of the circumstances to determine whether the delay was reasonable. <u>See also</u>, <u>Houston v. Clark County Sheriff Deputy</u>, 174 F.3d 809 (6th Cir. 1999) (Detention in a police car, while handcuffed, for one hour to secure a drug dog not unreasonable). In the instant case, the canine sniff occurred shortly after the traffic stop was initiated and within a reasonable time.

A positive canine sniff provides sufficient probable cause to search an automobile. <u>United States v. Perez</u>, 440 F.3d 363 (6th Cir.) <u>cert. denied</u>, 128 S.Ct. 374 (2007).

## CONCLUSION

The stop and search of the Defendant's vehicle was constitutional. The motion to suppress should be denied.

                                    Respectfully submitted,

                                    DONALD A. DAVIS
                                    United States Attorney

Dated: August 31, 2010                /s/ *Mark V. Courtade*
                                      MARK V. COURTADE (P32666)
                                      Assistant United States Attorney