UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DOUGLAS RAY WILLISON,

        Defendant .
_____/

No. 1:09-CR-232

Hon.  Robert Holmes Bell
       District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Douglas Willison and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.    <u>The Defendant Agrees to Plead Guilty</u>.  In the Western District of Michigan, the Defendant, Douglas Willison, agrees to plead guilty to the sole count contained in the Indictment: possession with intent to distribute one hundred (100) kilograms or more of a mixture or substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a).

2.    <u>The Defendant Understands this Crime</u>.  In order for the Defendant to be guilty of this count, the following must be true:

        A.    On August 9, 2009, the Defendant knowingly and intentionally possessed a controlled substance in Branch County, Michigan;

        B.    At the time he possessed the controlled substance, he intended to distribute it to another person or persons; and

        C.    The controlled substance was, in fact, more than one hundred (100) kilograms of marijuana.

The Defendant is pleading guilty because he is guilty of the charge described above.

3. <u>The Defendant Understands the Penalty</u>. The defendant realizes that this offense is punishable by a minimum term of five (5) years' imprisonment; a maximum term of forty (40) years' imprisonment, a fine of up to $2,000,000; a period of at least four (4) years' of supervised release; and a mandatory $100 special assessment. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. <u>Stipulations.</u> The Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts and law which need not be proven at the time of the plea or sentencing:

During July and August of 2009, a Drug Enforcement Administration (DEA) informant reported that Douglas Willison, who lives in Arizona, but grew up in Coldwater, Michigan, was in possession of up to 500 pounds of marijuana and that Mr. Willison intended to bring the marijuana to Michigan and then distribute it to customers who lived in northern Indiana. During early August of 2009, the informant was in telephone contact with Mr. Willison and learned he was in the Coldwater area. The informant reported that Mr. Willison said the marijuana was in a pickup truck that was brought to Michigan on a commercial car carrier. The informant reported that Mr. Willision intended to bring the marijuana to northern Indiana, where it would be distributed. By his guilty plea, Mr. Willison admits that the informant's information was true.

On August 9, 2009, in Branch County, Michigan, law enforcement officers of the SouthWest Enforcement Team (SWET), a state drug enforcement team headed up by

the Michigan State Police, along with an agent of the DEA, set out to find the Defendant and located Mr. Willision at a Coldwater area hotel. Mr. Willison was seen driving a pick up truck. Law enforcement officers then followed him to a storage locker facility. Mr. Willison was stopped leaving the facility for a traffic infraction. There were several plastic wrapped bales in the bed of the truck. During the traffic stop a K-9 unit was brought to the scene and a trained narcotics sniffing dog alerted to the bales in the bed of the truck. A subsequent search of the truck resulted in the seizure of approximately 150 pounds of marijuana.

A consent search of the storage locker uncovered another 300 pounds of marijuana. Mr. Willison admitted that he intended to distribute all the marijuana. Mr. Willison also admitted that the truck was packed with marijuana in Arizona and then shipped to Michigan on a commercial car carrier. He retrieved the truck near Coldwater, Michigan, the night before.

Police located a young woman who was at the hotel with Mr. Willison. . She was driving the rental car the pair had driven to Michigan. A search of the vehicle netted $49,300 in cash hidden in the spare tire. The cash was the proceeds of drug trafficking.

For purposes of computing the Sentencing Guidelines in this case, the parties agree that the Defendant's relevant conduct should be at least 100, but less than 400 kilograms of marijuana. The parties further agree that the defendant did not possess a firearm in or in relation to the offense of conviction. The parties also agree that the defendant did not occupy a leadership position in the reference to anyone else involved

in the charged conduct and further agree that the defendant was a full participant in the crime with which he is charged.

5.  Consent to forfeiture. In Michigan, the Drug Enforcement Agency and/or the United States Marshals possess $49,300 in cash seized from a rental vehicle controlled by the Defendant; this property has already been forfeited administratively. The SouthWest Enforcement Team has possession of the pickup truck that contained the marijuana which the Defendant has similarly forfeited. In Arizona, the United States has possession of a 2006 Mercedes Benz R-500 automobile owned by the Defendant. This vehicle is subject to a forfeiture action in the United States District Court for the District of Arizona in case CR-10-198 TUC DCB (CRP). The defendant agrees and consents to the forfeiture of that asset as proceeds of drug trafficking pursuant to any federal or state criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis above provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

6. <u>The United States Attorney's Office Agrees</u>:

    A    to bring no other charges against the Defendant in the Western District of Michigan and to not charge the Defendant with other offenses disclosed in his proffer(s) with the government;

    B    not to argue that the relevant conduct involved in the offense of conviction could potentially be higher than 400 kilograms of marijuana.

    C.    to support the Defendant's request for application of the "Safety Valve" provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2, if the defendant otherwise qualifies and makes a truthful statement concerning his involvement, and the involvement of others, in the offense of conviction.

    D.    not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b). However, if the defendant has received an adjustment pursuant to USSG § 5C1.2, the Defendant realizes that no acceptance of responsibility reduction below an offense level of 17 is authorized and the United States will not move

5

for the additional reduction if by doing so the result violates that prohibition.

E. that information provided by the Defendant through Defendant's proffer(s) will not be used by the Government to enhance the Defendant's sentence, in accordance with Sentencing Guidelines §1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s). It is expressly understood, however, that such information may be used by the Government at sentencing if the Defendant takes a position at sentencing that contradicts information provided by the Defendant pursuant to this agreement or any proffer agreement.

7. <u>The Sentencing Guidelines Apply</u>. The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum [and minimum] penalties described elsewhere in this Agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

8. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. The Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range other than as implicated by the stipulations in paragraph 4 above. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

9. <u>Waiver of Constitutional Rights</u>. By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

  a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

  b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

  c. The right to confront and cross-examine witnesses against the Defendant.

  d. The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e. The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

  By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

  10. <u>The Court is not a Party to this Agreement</u>. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

  11. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the Defendant.

  12. <u>Consequences of Breach</u>. If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms

8

of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

13. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

Respectfully submitted,

DONALD A. DAVIS
United States Attorney
Western District of Michigan

9-29-2010
Date

MARK V. COURTADE
Assistant United States Attorney

United States v. Douglas Willison
Plea Agreement – Final Page

    I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.


_9/29/10_  
Date

_[signature]_  
DOUGLAS WILLISON  
Defendant

    I am Douglas Willison's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


_9/29/10_  
Date

_[signature]_  
ALFRED S. DONAU III  
Attorney for Defendant